UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL HILL,<br><br>                Plaintiff,<br>and<br><br>KASEY A. JORGENSEN,<br><br>                Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>                Defendant. | Case Nos. 4:18-cv-00217-CWD<br>                 4:18-cv-00249-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Union Pacific Railroad Company's motions to dismiss. Idaho residents Kasey Jorgensen and Michael Hill are employed by Union Pacific; each was injured during the course and scope of his employment while working outside the state of Idaho. Each sued Union Pacific in a separate action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et. seq.*, which provides remedies in the form of money damages for on-the-job injuries incurred by employees not covered by state

workers' compensation laws. Union Pacific moves to dismiss, claiming the Court lacks personal jurisdiction over it. Fed. Rule Civ. P. 12(b)(2).

The Court consolidated the matters for the purpose of determining the virtually identical motions to dismiss, and finds the facts and legal arguments are adequately presented in the briefs and record without the need for oral argument. Dist. Idaho Loc. Civ. R. 7.1(d). After carefully considering the parties' briefs and pertinent authorities, the Court issues the following decision denying both motions.

## FACTS[1]

### 1. Michael Hill

Michael Hill is a resident and citizen of the state of Idaho, and he has been employed by Union Pacific in Twin Falls, Idaho, since 2001. On December 16, 2016, he was employed as a gang machinist. Although he resides in Twin Falls, Hill is required to travel outside the state of Idaho for work on behalf of Union Pacific. Hill receives his assignments from Union Pacific in Idaho, and his work is overseen in Idaho. Hill receives his paycheck from Union Pacific in the state of Idaho, and he receives work benefits from Union Pacific in the state of Idaho.

On December 16, 2016, Union Pacific assigned Hill work from Twin Falls, Idaho, and he reported to work in Kansas. Hill alleges he did not have the proper equipment to remove a wheel off an axle from a tie crane, and he was forced to use a sledge hammer instead. While swinging the sledge hammer, he injured his shoulder and bicep, and

---

[1] The following facts are not disputed.

suffered injuries. Hill returned to Idaho and received the majority of his medical treatment for his injuries in the Twin Falls area.

2.   **Kasey Jorgensen**

Jorgensen is a resident and citizen of the state of Idaho, and he has been employed by Union Pacific in Pocatello, Idaho, since 2011. Although he resides in Pocatello, Jorgensen is required to travel outside the state for work on behalf of Union Pacific. Like Hill, Jorgensen receives his assignments from Union Pacific in the state of Idaho, and his work is overseen in the state of Idaho. When he travels from Pocatello to the place he is assigned to work, Union Pacific reimburses him for his travel expenses. Jorgensen receives his paycheck from Union Pacific in the state of Idaho, and he receives work benefits from Union Pacific in the state of Idaho.

On November 7, 2017, Jorgensen was working for Union Pacific as a roadway machinist/heavy equipment mechanic. After receiving his work assignment in Pocatello, he reported to work in Wyoming. While troubleshooting a fuel truck together with the driver of the truck, Jorgensen checked under the hood. The truck driver slammed the hood down, hitting Jorgensen between the shoulder blades and causing physical injuries. Jorgensen received all of his medical treatment for his injuries in the Pocatello area after the accident when he returned to Idaho.

3.   **Union Pacific**

Union Pacific is a Delaware corporation with its headquarters and principal place of business located in Omaha, Nebraska, where it also operates a central operations center for train dispatching and network operations monitoring. Union Pacific operates in

twenty-three states, with a total rail system of 32,122 miles. Of its 32,122 miles of rail trackage, 848 miles, or 2.64% of its total rail system, are located in Idaho. Union Pacific employs 41,000 people. Of those employees, eight hundred employees, or 1.95% of the company's total workforce, are employed in the state of Idaho. Plaintiffs are two of these eight hundred employees.

Although both Hill and Jorgensen testified in their affidavits that Union Pacific assigns work to them in Twin Falls and Pocatello, respectively, it is not clear whether Union Pacific maintains offices or specific work sites in the state of Idaho. Union Pacific is authorized by the Secretary of State to transact business in the state of Idaho, and it is currently registered to do so. Decl. of Gabiola Ex. A. (Dkt. 18-2.) Union Pacific maintains a registered agent for service of process in the state of Idaho as well. Decl. of Gabiola Ex. B. (Dkt. 18-2.)

## DISCUSSION

1. **Motion to Dismiss Standard**

Under Fed. Rule Civ. P. 12(b)(2), Plaintiffs bear the burden of proving jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Where "the [defendant's] motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id*. The Court looks to the pleadings and affidavits to determine whether the plaintiff has made a prima facie showing of personal jurisdiction. *Id*. "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be

taken as true." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (quoting *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). *See also Omega RV v. RV Factory, LLC*, No. 1:16-CV-00204-EJL, 2017 WL 1943952, at *2 (D. Idaho May 10, 2017); *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1118 (D. Idaho 2009).

2.   **Personal Jurisdiction**

Plaintiffs have sued Union Pacific under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et. seq.* Under FELA, railroad workers can sue their employers for personal injuries suffered at the hands of the employer or fellow employees. Liability is founded upon common law concepts of negligence and injury, although Congress has abrogated the common law defenses of contributory negligence and assumption of risk. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). While contributory negligence does not bar recovery, any damages awarded to the worker are reduced in proportion to the amount of his or her negligence. 45 U.S.C. § 53.

45 U.S.C. § 56 does not address personal jurisdiction over railroads. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1553 (2017).[2] "Absent an applicable federal statute governing personal jurisdiction, the district court applies the law of that state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (citing Fed. R. Civ. P. 4(k)(1)(A)). For an Idaho court to exert jurisdiction over an out-of-state defendant, "two criteria must be met; the act giving rise to the cause of action must fall within the scope of our long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Regional Medical Ctr. v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992).

"Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Wells Cargo, Inc.*, 676 F. Supp. at 1118. "Thus, under Idaho law, the jurisdictional and federal due process analyses are the same." *Id*.

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

---

[2] 45 U.S.C. § 56 provides in relevant part:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

U.S. 310, 316 (1945) (internal quotations and citation omitted). "[T]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 108-109 (1987) (internal quotations and citations omitted). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id*. at 109 (internal quotations and citations omitted) (emphasis in original).

Personal jurisdiction can be general or specific. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). A court may assert general personal jurisdiction over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317). In contrast, specific personal jurisdiction is exercised when a state asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state. *Helicoptores Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *Lake*, 817 F.2d at 1421.

Plaintiffs do not contend the Court has general jurisdiction over Union Pacific. Instead, Plaintiffs assert the Court has specific jurisdiction pursuant to Idaho Code § 5-514(a). This statute confers personal jurisdiction over any person, firm, company,

association or corporation arising through the "transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation." Idaho Code § 5-514(a). Accordingly, the Court will address only specific jurisdiction.

The United States Court of Appeals for the Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205–06 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Plaintiffs bear the burden of satisfying the first two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If Plaintiffs succeed in satisfying the first two prongs, the burden shifts to Union Pacific to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *See id.* (quoting *Schwarzenegger*, 374 F.3d at 802); *Wells Cargo*, 676 F.Supp.2d at 1120 (applying three-prong test).

### A. *Purposeful Availment and Relatedness*

The first prong of the specific jurisdiction test is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560, (9th Cir. 1995) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In determining whether the first prong has been met, the Ninth Circuit distinguishes between cases arising out of tort and those arising out of contract. While a purposeful direction analysis is used in tort cases, *see Schwarzenegger*, 374 F.3d at 802–03, a purposeful availment analysis is used in contract cases. *See Boschetto*, 539 F.3d at 1016; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir. 1988).

A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. *Schwarzenegger*, 374 F.3d at 802. By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In return for these "benefits and protections," a defendant must—as a quid pro quo—"submit to the burdens of litigation in that forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of

goods originating elsewhere. *Schwarzenegger*, 374 F.3d at 803 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984) (finding purposeful direction where defendant published magazines in Ohio and circulated them in the forum state, New Hampshire)).

The second prong, relatedness, requires application of a "but for" test. *Melaleuca, Inc. v. Hansen*, No. CV07-212-E-EJL, 2008 WL 2788470, at *12 (D. Idaho July 18, 2008) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131–32 (9th Cir. 2003)). "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken*, 503 F.3d at 1060 (citing *Yahoo! Inc.*, 433 F.3d at 1210) (internal quotation marks omitted).

Union Pacific argues that the United States Supreme Court's holding in *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549 (2017), directs the outcome here, and the Court should find it lacks personal jurisdiction. In *Tyrrell*, a North Dakota resident employed by the BNSF Railway Company as a conductor sued in a Montana state court for injuries he sustained while working for BNSF in Amarillo, Texas. BNSF is incorporated in Delaware and has its principal place of business in Texas. The Supreme Court considered only whether Montana had general jurisdiction over BNSF, and held that it did not, because the plaintiff's claims were unrelated to any activity by the plaintiff or BNSF occurring in Montana. 137 S.Ct. at 1559. However, the court found that "the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana." *Id.* Thus, *Tyrrell* does not foreclose

a determination that specific jurisdiction exists over Union Pacific arising out of Plaintiffs' employment relationship with Union Pacific in Idaho.

Union Pacific attempts to distinguish *Overfelt v. BNSF Railway Co.*, No. 15-1239-EFM-KGG, 2016 WL 1045477 (D. Kan. Mar. 15, 2016), relied upon by Plaintiffs, in which the District Court in Kansas determined BNSF's contacts with Kansas established specific personal jurisdiction. In *Overfelt*, the plaintiff resided in Kansas, and worked as a conductor employee for BNSF. The plaintiff was hired by BNSF in Kansas, assigned work in and from Kansas, and was required to report for work in Kansas. On June 10, 2013, he reported to work in Kansas. The following day, the plaintiff was working as a conductor in BNSF's Amarillo, Texas, yard, and suffered injuries upon being thrown from a gondola car to the ground. The plaintiff traveled back to Kansas and his work ended for the day in Kansas, several hours after he was injured in Texas.

Overfelt sued BNSF in the District of Kansas, alleging that his injuries arose out of his employment relationship with BNSF. The court held that it could exercise specific jurisdiction over BNSF, because BNSF had substantial connections with Kansas related to the plaintiff's cause of action. 2016 WL 1045477 at *3. Specifically, the court found that BNSF created the contact with Kansas as it "became an employer of an individual in the state of Kansas," and the plaintiff was trained, supervised, and assigned work in Kansas. *Id.* Finding that the plaintiff's injuries arose "out of his employment relationship with Defendant and the injuries he sustained during his employment with Defendant and while on the job," the court found that BNSF purposefully directed activities toward the

state of Kansas. *Id.* at *4.[3] The court found that minimum contacts existed to satisfy specific personal jurisdiction. *Id.* The court did not address the reasonableness factor, as BNSF did not raise the issue and therefore failed to meet its burden. *Id.* at *5.

The Court finds *Overfelt* persuasive. Here, much like *Overfelt,* Union Pacific employed Plaintiffs in Idaho, they reported for work in Idaho, they received their paychecks in Idaho, and Union Pacific employees directed their work activities in Idaho. Union Pacific employs approximately eight hundred employees in Idaho and has a registered agent for service of process in Idaho. Just as in *Overfelt*, Union Pacific created the contact with Idaho as it became the employer of several hundred individuals, including Hill and Jorgensen, in the state of Idaho. By hiring Idaho residents, and receiving in return certain benefits, privileges, or protections from Idaho in connection with Plaintiffs' employment, the traditional "quid pro quo justification for finding purposeful availment" exists. *See Schwarzenegger*, 374 F.3d at 803. And, "but for" the employment relationship with Union Pacific, Plaintiffs' injuries would not have occurred.

Union Pacific does not dispute the nature and extent of its contacts with both Hill and Jorgensen in connection with their employment in the state of Idaho. Unlike the facts in *Tyrrell*, both Hill and Jorgensen allege injury related to Union Pacific's business

---

[3] Although the *Overfelt* court utilized language suggesting application of a purposeful direction analysis, it is clear the court applied what would be understood in the Ninth Circuit as a purposeful availment analysis. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (explaining purposeful availment "requires us to determine whether the evidence Plaintiff presented to the district court demonstrated that Defendants purposely availed themselves of the privilege of conducting business in Kansas. Purposeful availment requires actions by the Defendant which 'create a substantial connection with the forum state.'").

**MEMORANDUM DECISION AND ORDER - 12**

activities in Idaho as their employer, despite the location of the accidents that resulted in physical injuries in each case. Plaintiffs point to more than their residency in Idaho to satisfy the requirements for specific jurisdiction—specifically, their respective employment relationships with Union Pacific formed in Idaho, their receipt of work assignments in Idaho, and their receipt of work-related compensation and benefits in Idaho. Here, the business Union Pacific does in Idaho is sufficient to subject Union Pacific to specific jurisdiction in Idaho, as the claims arise out of Plaintiffs' employment relationship (or contract as alleged by Plaintiffs) with Union Pacific in Idaho. Moreover, there would be no question the Court could exercise personal jurisdiction over Union Pacific had Plaintiffs been injured in Idaho while working for Union Pacific; that they were assigned work elsewhere is of no consequence under the facts here and as supported by the holding in *Overfelt*.

Union Pacific argues the Court should not rely upon *Overfelt*, because the case was decided prior to *Tyrrell* and therefore preempted. However, the Court finds *Overfelt* is consistent with *Tyrrell,* because *Overfelt* decided the issue of specific jurisdiction, while *Tyrrell* did not. The Supreme Court in *Tyrrell* specifically noted that, in certain cases where claims are brought related to the railroad's business in a particular state, such might be sufficient to subject the railroad to specific personal jurisdiction. 137 S.Ct. at 1559. The two holdings are consistent, as *Overfelt* found that BNSF's activities in Kansas, where it employed the plaintiff, were sufficient to subject the railroad to specific personal jurisdiction there, while the *Tyrrell* Court decided Montana could not exercise

general jurisdiction over BNSF when neither the plaintiff nor the claim had any connection to Montana.[4]

Further, the Court has persuasive authority of its own in a similar case. In *Wood v. Kinetic Sys., Inc.*, No. 1:09-cv-579-CWD, 2010 WL 893647 (D. Idaho Mar. 9, 2010), the Court found the first two prongs of the specific jurisdiction test were satisfied when an out-of-state corporation hired an Idaho resident as its employee. In that case, the plaintiff met his burden of showing that the defendant's conduct satisfied both the purposeful availment and relatedness prongs, because the employer hired an Idaho resident; paid local union dues to the local union in Idaho; paid wages and taxes to Idaho; advertised its services to Idaho companies; and the plaintiff's cause of action arose out of the employment agreement. *Id.* at *6. *See also Sheets v. Integrated Information Utility Sys., Inc.*, No. CV98-1328-KI, 1999 WL 317274 at *1 (D. Or. June 17, 1999 (finding Oregon had jurisdiction over out-of-state corporation that hired a worker allowed to telecommute from her home in Oregon on the grounds that the employer had created a continuing relationship and obligation with a citizen of another state.).

The Court therefore finds that sufficient minimum contacts exist between Idaho and Union Pacific to confer specific personal jurisdiction.

---

[4] Union Pacific directs the Court to *DeLeon v. BNSF Ry. Co.*, 426 P.3d 1 (D. Mont. 2018), arguing that the court there held no personal jurisdiction existed in a case similar to the one before the Court. However, upon review of *DeLeon*, the facts are akin to those in *Tyrrell*, not *Overfelt*. In *DeLeon*, several employees injured while working for the railroad sued BNSF in Montana state court. None of the plaintiffs were employed by BNSF in Montana, and all were injured while working in states other than Montana. The court held that BNSF's business activities, standing alone, were insufficient to confer general personal jurisdiction over BNSF by Montana state courts. 426 P.3d at 9. The court did not consider the issue of specific personal jurisdiction. Accordingly, *DeLeon* is distinguishable from the two cases before the Court based upon the facts and the issue decided.

### B. *Reasonableness*

Because Plaintiffs have satisfied the first two prongs of the test for specific personal jurisdiction, the burden shifts to Union Pacific "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger*, F.3d 374 at 802). To determine the reasonableness of exercising jurisdiction over a defendant, the court considers the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id*. (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)). As to the first factor, some decisions in the Ninth Circuit "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (citing *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir. 1987)). However, other decisions provide that, "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." *Core–Vent Corp.*, 11 F.3d at 1488 (9th Cir. 1993) (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)) (alterations in original).

Union Pacific did not address the reasonableness factor in its briefing. Consequently, Union Pacific failed to meet its burden that the exercise of personal jurisdiction over it in either of these two cases would not be reasonable. *See Overfelt*, 2016 WL 1045477 at *5.

## CONCLUSION

Based upon the foregoing, both motions to dismiss will be denied.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss (Case No. 4:18-cv-00217-CWD, Dkt. 14) is **DENIED**.

2) Defendant's Motion to Dismiss (Case No. 4:18-cv-00249-CWD, Dkt. 17) is **DENIED**.

3) The Court will conduct a telephonic status conference with the parties for the purpose of amending the scheduling order in both matters.

DATED: January 24, 2019

Honorable Candy W. Dale
United States Magistrate Judge